# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**
        Plaintiff,

v.                                         Case No. 03-CR-46

**FAWZIYEH RAKI MASOUD,**
        Defendant.

---

## SENTENCING MEMORANDUM

Defendant Fawziyeh Masoud pleaded guilty to participation in a scheme to commit fraud by means of wire communication. 18 U.S.C. § 1343. Although her guideline range was 10-16 months in prison, the parties jointly recommended a sentence of three years probation. I agreed with the parties that a probationary sentence was appropriate and in this memorandum set forth my reasons as required by 18 U.S.C. § 3553(c).

## I. BACKGROUND

A man named Abdel Jebara concocted a scheme to fraudulently redeem coupons. He recruited various individuals to collect and cut coupons from newspaper inserts. He and other co-conspirators then recruited more than 300 "stores" (some of which were not actually retail stores) to fraudulently redeem coupons that had not actually been presented by customers making a purchase. Due to the volume of coupons redeemed in this country, manufacturers rely on "clearinghouses" to sort them and provide reimbursements. Assisted by an insider at one of the clearinghouses, who approved the fraudulent reimbursement applications, Jebara bilked hundreds companies out of more than $5,000,000. See United States v. Jebara, 313 F. Supp. 2d 912, 913 n.1 (E.D. Wis. 2004). Defendant's role in the

scheme was to cut and weigh coupons, which would then be picked up by other scheme participants. She was paid a small amount per pound. The parties estimated that the amount of "loss" attributable to defendant under § 2B1.1(b) of the guidelines was about $120,000.

Defendant was born in the West Bank in 1952. She never went to school and cannot read or write in any language. She married in 1966, had five children, and never worked outside the home. In 1979 her husband became a United States citizen, and she followed him to this country a few years later, becoming a permanent resident in 1988. Nevertheless, she was totally un-assimilated to this country: she spoke no English, wore traditional dress, and could not even dial a telephone without assistance. When other Arab women in her neighborhood began cutting coupons for Jebara, she joined them. Defendant's husband was disabled due to rheumatoid arthritis and asthma, receiving social security benefits. Defendant herself suffered from serious health problems, including diabetes, high blood pressure and arthritis, for which she took various medications.

## II. DISCUSSION

In imposing sentence, I must consider the factors set forth in § 3553(a):

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

Upon consideration of these factors, I must impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2).

In the present case, I found that the probationary sentence recommended by the parties made the most sense. Defendant was part of a large scale fraud conspiracy, but her role in it was minimal. She only cut and weighed coupons and profited minimally. She was not aware of the scope of the overall conspiracy and worked at Jebara's direction. Thus, the offense was quite mitigated.

Defendant's character and background also supported a probationary sentence. She was fifty-three years old, in poor health, with no prior record, and totally unsophisticated. She was in no way dangerous and presented a very low risk of re-offending. Further, given her minimal role in the offense and background confinement was not necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Finally, despite her status as a permanent resident, she faced possible deportation.

As noted, the guidelines call for a term of 10-16 months. For the reasons stated, this range was greater than necessary to satisfy the purposes of sentencing. Further, given her virtual inability to function in this society without significant assistance, I could not fathom how the Bureau of Prisons would deal with defendant. Finally, I sentenced a similarly situated co-defendant, Anam Manasrah, whose role was also to cut and weigh coupons, to

a term of probation. In order to avoid unwarranted disparity, I imposed the same sentence in the present case.[1]

### III.  CONCLUSION

Therefore, I placed defendant on probation for a period of three years, the conditions of which appear in the judgment.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 12th day of August, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[1] I imposed a condition of six months home confinement on Manasrah. However, because defendant was essentially homebound anyway, I saw no need to impose such a restriction on her. The government rightly pointed out that monitoring defendant would likely be more of a burden on the probation office than defendant.

4