# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

    **v.**                                                                                             **Case No. 03-CR-46**

**FAWZIYEH RAKI MASOUD,**
        **Defendant.**

## MEMORANDUM AND ORDER

Pending before me is defendant Fawziyeh Raki Masoud's motion for a writ of error coram nobis. For the reasons that follow, I find it appropriate to hold an evidentiary hearing on the motion.

## I. BACKGROUND

Pursuant to an agreement with the government, on May 13, 2005, defendant pleaded guilty to wire fraud, contrary to 18 U.S.C. § 1343, arising out of her participation in a scheme concocted by a man named Abdel Jebara to fraudulently redeem coupons. Jebara recruited various individuals to collect and cut coupons from newspaper inserts. He and other co-conspirators then enlisted more than 300 "stores" to fraudulently redeem the coupons, which had not actually been presented by customers making a purchase. Due to the volume of coupons redeemed in the United States, manufacturers rely on "clearinghouses" to sort them and provide reimbursements. Assisted by an insider at one of the clearinghouses, who approved the fraudulent reimbursement applications, Jebara bilked hundreds companies out of more than $5,000,000. Defendant's role in the scheme was to cut and weigh coupons, which were then picked up by other scheme participants. She was paid a small amount per

pound.

The parties agreed to a loss amount of $120,000 for defendant under U.S.S.G. § 2B1.1(b) and a sentencing guideline range of 10-16 months' imprisonment. Nevertheless, for a variety of reasons, including her minor role in the offense, her lack of prior record, her unsophisticated nature, and her serious health problems, the parties jointly recommended a sentence of 3 years' probation. On August 11, 2005, I sentenced defendant to the recommended probationary term. Defendant took no appeal and successfully completed probation.

On July 20, 2011, defendant filed a motion to set aside her conviction, in which she indicated that she had been ordered deported by an Immigration Judge based on her conviction, which qualified as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(M). She claimed that she would not have entered her plea had she known that she would be deported. She noted that under Padilla v. Kentucky, 130 S. Ct. 1473 (2010), a lawyer's failure to advise her client of the risk of deportation may constitute ineffective assistance of counsel, and she argued that her lawyer failed to ensure that she understood that a consequence of her plea would be removal. She accordingly asked the court to set aside the conviction resulting from her May 13, 2005 guilty plea.

The motion lacked a stated jurisdictional basis, but I noted that it could be construed as seeking a writ of error coram nobis, see United States v. Orocio, 645 F.3d 630 (3d Cir. 2011) (considering a Padilla claim via coram nobis motion), and provided defendant with time to supplement her submission. On August 4, 2011, defendant filed a supplemental motion seeking coram nobis relief, and I ordered the government to respond by August 26. On August 23, 2011, the Seventh Circuit held that Padilla announced a new rule of criminal procedure

inapplicable to cases on collateral review. Chaidez v. United States, 655 F.3d 684 (7th Cir. 2011). I directed the government to address this decision in its response and permitted defendant to file a reply by September 9 addressing the issue. The government filed its opposition to the motion on August 24, 2011, and defendant filed a reply on September 7. On September 9, 2011, defendant filed supporting affidavits and on September 14 a supplemental reply brief. I allowed these additional filings but permitted the government to file a sur-reply. Based on my review of these materials, I find disputed issues of fact and thus will hold a hearing on the claim.

## II. DISCUSSION

### A. Applicable Legal Standards

Coram nobis relief is limited to (1) errors of the most fundamental character that render the proceeding invalid, (2) situations where there are sound reasons for the failure to seek earlier relief, and (3) instances when the defendant continues to suffer from her conviction even though she is out of custody. United States v. Sloan, 505 F.3d 685, 697 (7th Cir. 2007). Motions for such relief are generally considered under the same standards as requests for habeas corpus, with the showing of some substantial legal disability flowing from the conviction substituting for the "custody" requirement of § 2255. Howard v. United States, 962 F.2d 651, 653 (7th Cir. 1992). "Specifically, a petition for a writ of error coram nobis to vacate a federal conviction where the sentence has been served will not be granted unless a petitioner can show that he or she suffers from ongoing civil disabilities, or adverse collateral consequences, due to his or her allegedly wrongful conviction." Id.

Deportation would appear to be a severe collateral consequence, see Padilla, 130 S.

3

Ct. at 1481, and defendant provides reasons why she did not raise the issue sooner, i.e., she was unaware of the problem until immigration authorities sought her removal, and she first attempted to obtain relief through the immigration proceedings before filing the instant motion. Defendant also claims ineffective assistance of counsel, which may constitute a fundamental defect for purposes of coram nobis relief. See, e.g., Evola v. Carbone, 365 F. Supp. 2d 592, 598 (D.N.J. 2005). In order to establish a claim of ineffective assistance, defendant must show that (1) her attorney's performance was objectively deficient, and (2) she was prejudiced by the sub-par representation. Strickland v. Washington, 466 U.S. 668, 687 (1984). To meet the performance prong, she must establish specific acts or omissions of counsel falling outside the wide range of competent assistance under prevailing professional norms. Coleman v. United States, 318 F.3d 754, 758 (7th Cir. 2003). In order to establish prejudice, she must show that there is a reasonable probability that, but for counsel's mistakes, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. Strickland, 466 U.S. at 694. In a case where the defendant challenges counsel's advice regarding a guilty plea, the prejudice prong requires a showing of a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985).

**B.   Analysis**

Relying on Padilla, defendant claims that counsel performed deficiently by failing to clearly advise her that she would be deported based on her plea. In an affidavit attached to the government's initial response, defense counsel denies these allegations and sets forth the steps she took to learn the probable immigration consequences and advise defendant accordingly. In pertinent part, counsel indicates that in late April and early May, she conferred

with an immigration specialist, who advised her that based on the plea agreement defendant would have no defense to deportation as an aggravated felon, information counsel conveyed to defendant through a relative on May 5, 2005.[1]

In her supplemental materials, defendant denies certain parts of counsel's narration. In particular, she denies receiving the information counsel received from the immigration specialist, and the relative who translated for her denies transmitting such information. Defendant further argues that counsel provided erroneous deportation information during the plea process. Specifically, in a letter sent about two months before the plea, counsel advised that a person with a green card could avoid deportation if the crime committed occurred more than five years since the person last entered the United States, which is apparently incorrect (at least as to this type of offense). The same letter also advised defendant that upon a guilty plea she would be precluded from re-entering the United States in the event that she ever left the country. Defendant argues that, because she had no desire to leave the United States, this information was at a minimum non-responsive to her concerns; to the extent that it suggested she would not be removed if she stayed, it was, she says, incorrect.

As noted above, Chaidez held that Padilla announced a new rule. In reaching this conclusion, the Seventh Circuit noted that prior to Padilla the lower federal courts, including at least nine courts of appeals, had uniformly held that the Sixth Amendment did not require counsel to provide advice concerning collateral (as opposed to direct) consequences of a guilty plea. 655 F.3d at 690; see also Padilla, 130 S. Ct. at 1487 (Alito, J., concurring in the judgment) ("Until today, the longstanding and unanimous position of the federal courts was that

---

[1] Because defendant speaks no English, counsel often communicated with her through a bi-lingual relative.

5

reasonable defense counsel generally need only advise a client about the direct consequences of a criminal conviction."). The Chaidez court further noted that the majority opinion in Padilla drew a concurrence authored by Justice Alito (joined by Chief Justice Roberts), who suggested that the rule should be limited to affirmative mis-advice, 130 S. Ct. at 1492, and a dissenting opinion authored by Justice Scalia (joined by Justice Thomas), who suggested that the Sixth Amendment required no sound advice about collateral consequences, id. at 1494-95. "That the members of the Padilla Court expressed such an array of views indicates that Padilla was not dictated by precedent." Chaidez, 655 F.3d at 689 (internal quote marks omitted). Chaidez thus suggests that defendant's Padilla claim fails.[2]

However, in her supplemental materials, defendant argues that Chaidez can be distinguished. It appears that the defense lawyer in Chaidez provided no immigration advice, and the Seventh Circuit did not specifically address whether a claim alleging affirmative mis-advice would also be deemed to rely on a "new" rule. While the Seventh Circuit was one of those courts of appeal which held, pre-Padilla, that counsel need not advise the defendant of collateral matters like deportation, see, e.g., Santos v. Kolb, 880 F.2d 941, 944 (7th Cir. 1989) (finding no ineffective assistance in counsel's failure to inform an accused of the likely deportation consequences arising out of a guilty plea); United States v. George, 869 F.2d 333, 338 (7th Cir. 1989) ("[W]e decline to hold as a matter of law that counsel's failure to inform a client as to the immigration consequences which may result from a guilty plea, without more, is 'outside the wide range of professionally competent assistance.'" ), I have found no pre-Padilla Seventh Circuit case addressing mis-advice; the question appears to have been an

---

[2]In her initial reply brief, defendant acknowledged that Chaidez controlled but nevertheless argued that Orocio correctly addressed the retroactivity question. (R. 477 at 3.)

open one in this circuit at the relevant time. See, e.g., Acevedo-Carmona v. Walter, 170 F. Supp. 2d 820, 826 n.1 (N.D. Ill. 2001) ("Therefore, although the Seventh Circuit has held that an attorney cannot be deemed ineffective for failing to discuss the possible collateral consequences of a plea, here it may be possible that Acevedo's counsel fell below the standard of objective reasonableness when he gave Acevedo misinformation after being asked specific questions.").

Other circuits did distinguish between mere silence and affirmative mis-advice about immigration matters pre-Padilla, allowing ineffective assistance claims based on the latter but not the former. See, e.g., United States v. Kwan, 407 F.3d 1005, 1015-1017 (9th Cir. 2005); United States v. Couto, 311 F.3d 179, 188 (2d Cir. 2002); Downs-Morgan v. United States, 765 F.2d 1534, 1540-1541 (11th Cir. 1985). Justice Alito, in his concurring opinion in Padilla, suggested that this distinction represented the prevailing view:

> At least three Courts of Appeals have held that affirmative misadvice on immigration matters can give rise to ineffective assistance of counsel, at least in some circumstances. And several other Circuits have held that affirmative misadvice concerning nonimmigration consequences of a conviction can violate the Sixth Amendment even if those consequences might be deemed "collateral." By contrast, it appears that no court of appeals holds that affirmative misadvice concerning collateral consequences in general and removal in particular can never give rise to ineffective assistance. In short, the considered and thus far unanimous view of the lower federal courts charged with administering Strickland clearly supports the conclusion that [the] Kentucky Supreme Court's position [that neither counsel's failure to advise petitioner about the possibility of removal, nor counsel's incorrect advice, could provide a basis for relief] goes too far.

Padilla, 130 S. Ct. at 1493-94 (Alito, J., concurring) (internal footnotes omitted).

Based on this authority, it can be argued that a claim of affirmative mis-advice is not based on a new rule but rather was a component of counsel's duty at the time of defendant's plea. Therefore, I decline at this time to deny the motion under Chaidez, as the government

7

requests. The parties dispute what counsel told defendant and when. An evidentiary hearing seems necessary to resolve these disputes pertinent to the performance issue. The parties should at the hearing focus on the claim of affirmative mis-advice, as a claim based on failure to advise is, at that this point and in this circuit, foreclosed.

A hearing also appears necessary to resolve the prejudice prong. As noted, to show prejudice defendant must establish that, but for counsel's bad advice, there is a reasonable probability she would not have pleaded guilty and would have insisted on going to trial. See Hill, 474 U.S. at 59. The Seventh Circuit has held that "a mere allegation by the defendant that [she] would have insisted on going to trial is insufficient to establish prejudice." United States v. Cieslowski, 410 F.3d 353, 359 (7th Cir. 2005). "The defendant must go further and present objective evidence that a reasonable probability exists that [she] would have taken that step." Id.; see also United States v. Fudge, 325 F.3d 910, 924 (7th Cir. 2003) ("A defendant is required to establish through objective evidence that a reasonable probability exists that [she] would have gone to trial."); Berkey v. United States, 318 F.3d 768, 773 (7th Cir. 2003) ("As we plainly noted in McCleese v. United States, 75 F.3d 1174, 1179 (7th Cir. 1996), a self-serving statement is not enough to satisfy the second Strickland prong. Precedent on this question is manifold and clear: the defendant's sole assertion that [she] would have proceeded to trial cannot carry the burden to show prejudice under Strickland.").

In her original papers, defendant presented little more than a bare allegation. In her original affidavit, defendant averred: "If I had known that I could be deported based on my guilty plea in this case, I never would have pled guilty. Deportation would be extremely difficult to me as I would be returned to Palestine where I will not be able to work or obtain the medical care I need for serious health concerns that I have. I would have no means of supporting myself

8

in Palestine." (R. 471-1 at 3 ¶ 8.) In her original motion, defendant further asked the court to take judicial notice of the unique challenges an individual would face if deported to Palestine, particularly a person such as herself, illiterate and with little education. However, she presented no objective evidence that she would have rejected the plea agreement and taken her chances at trial had she known of the deportation consequences. For instance, she presented no affidavits from family members, including the relative who passed messages between defendant and counsel, on this issue. Nor did she present objective evidence regarding the situation she would face in Palestine, e.g., whether she has relatives there.[3]

However, in her supplemental materials, defendant presents an affidavit from the relative, who contends that deportation was the most important issue in the case, and that they believed it had been resolved in her favor in the plea agreement. He further describes her situation, contending that a plea agreement allowing deportation would have made no sense for her. This seems sufficient to create an issue of fact regarding whether defendant would have gone to trial had she been "properly" advised.

Defendant will, in order to show prejudice, also have to address the government's argument regarding the strength of the evidence and the significant advantages she obtained through the plea agreement. In her first reply brief, she argued that the wisdom of her decision to accept the plea agreement in light of the evidence is irrelevant. But courts routinely consider the alternatives the defendant faced in analyzing prejudice. See, e.g., United States v. Mora-Gomez, 875 F. Supp. 1208, 1214-15 (E.D. Va.1995). Indeed, in the seminal case on this issue the Supreme Court "note[d] that courts applying this standard will often review the

---

[3]The pre-sentence report indicated that a daughter lived in Israel.

9

strength of the prosecutor's case as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial." Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001) (citing Hill, 473 U.S. at 59-60). As a general matter, the stronger the evidence and the better the deal, the less probable it is that a reasonable defendant would have gone to trial. The government contends that the evidence in this case was strong, and defendant obtained a plea agreement for probation despite facing prison after a trial. Even with deportation probable, acceptance of the plea agreement may have represented her best choice. The government contends that: "It made perfect sense to confront the obstacles of prison and deportation one challenge at a time, especially given her family situation, having in 2005 a 12 year old daughter still living at home, a husband receiving Social Security disability payments for physical problems, and one married daughter living in Israel, whom she could presumably live with, or at least live close to, if deported." (R. 476 at 13.)

### III. CONCLUSION

As I indicated on the record at the January 4 status, an evidentiary hearing seems the best way of resolving this motion. At the status, the court provided several proposed dates, with counsel directed to advise the clerk of witness availability. The court will issue a notice setting the date after hearing from counsel.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin, this 5th day of January, 2012.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

10